UNITED STATES DISTRICT COURT
DISTRICT OF NEW JERSEY

| | | |
|---|---|---|
| ZHANE MORRISEAU, | : | |
| | : | |
| Plaintiff, | : | Hon. Dennis M. Cavanaugh |
| | : | |
| v. | : | **OPINION** |
| | : | |
| | : | Civil Action No.: 04-4169 |
| COMMISSIONER OF SOCIAL SECURITY, | : | |
| | : | |
| Defendant. | : | |

DENNIS M. CAVANAUGH, U.S.D.J.

This matter comes before the Court upon Zhane Morrisseau's ("Plaintiff") appeal from a final decision of the Commissioner of the Social Security Administration's ("Commissioner")denying Plaintiff's request for Supplemental Security Income("SSI"). This Court has jurisdiction to review this matter pursuant to 42 U.S.C. § 405(g) and § 1383(c)(3). This matter is decided without oral argument pursuant to Rule 78 of the Federal Rules of Civil Procedure. As detailed below, it is the finding of this Court that the Commissioner's decision is based on a complete analysis supported by substantial evidence. Accordingly, the Commissioner's decision is **affirmed**.

### I. Background

### A. Procedural History

Plaintiff, alleging disability as of May 1, 2001, filed an application for Child's SSI on February 15, 2002. (R. 44-48.) Her claims were initially denied and denied again on

1

reconsideration. (R. at 17-32.) On January 8, 2003, Plaintiff filed a timely request for a hearing before an Administrative Law Judge ("ALJ"). (R. at 33.) The hearing took place on July 3, 2003, before ALJ Richard L. De Steno. (R. at 34.) On September 9, 2003, the ALJ issued a decision denying Plaintiff's disability. (R. at 16-22.) On November 6, 2003, Plaintiff filed a request for review with the Appeals Council. (R. at 11.) The Appeals Council denied Plaintiff's request for review on June 23, 2004. (R. at 4-7.) Upon denial, the ALJ's ruling became the Commissioner's final decision. (R. at 4.) On August 27, 2004, Plaintiff filed an action before this Court claiming disability "since at least February 15, 2001." (Plaintiff's Complaint at ¶ 6.)

### B. Factual History

#### 1. Testimony of Regina Morrisseau

On July 3, 2003, Plaintiff's mother, Regina Morrisseau ("Regina"), testified on her behalf.(R. at 274-91.) Regina stated Plaintiff was born on July 20, 1994, and she is now eight and a half years old. (R. at 274.) Regina noted that Plaintiff has lived with Regina her entire life. (R. at 274.) Regina stated she filed an application for Plaintiff to receive SSI because Plaintiff has difficulties learning at school and she hits some of the other children in class. (R. at 275.) Plaintiff started school when she was five years old. (Id.) Before Plaintiff started school she participated in a pre-school program for two years. (R. at 275-76.) Regina testified Plaintiff was violent in kindergarten, and that she broke a classmate's nose with a book. (R. at 276.) Also, Regina noted that Plaintiff's violent behavior was isolated to this one incident and she often had to sit in the classroom and monitor Plaintiff's behavior in kindergarten. (R. at 276.) Regina testified that this Plaintiff's behavioral problems continued into the first grade, and Plaintiff's behavior included outbursts in the classroom, walking out of the classroom, and "talking smart with the teachers." (R. at 278.)

In addition to behavior problems, Regina stated that Plaintiff had trouble learning because she is dyslexic. (R. at 277.) Regina also stated that Plaintiff needed help with her homework because due to her difficulty with reading comprehension and writing. (R. at 278.) Regina testified that Plaintiff had to repeat first grade because she had problems learning, paying attention, and comprehending. (Id.) Regina stated that Plaintiff attended first grade in East Orange, then they moved to Roselle, where Plaintiff repeated first grade.[1] (Id.)

Regina stated that the East Orange and Roselle schools placed Plaintiff in a self contained classroom. (R. at 279.) Regina testified that when she visited the school, Plaintiff's class had only nine students and four teachers. (R. at 279-80.) Regina stated that Plaintiff also meets with a speech teacher on occassion. (R. at 280.) Regina noted Plaintiff gets easily frustrated in school if the teacher puts something on the board she feels is "too hard." (R. at 284.) In addition, Regina stated that Plaintiff pinches some of her classmates, and stands up and walks out during class. (Id.)

At the time of the hearing Regina had not received Plaintiff's Individual Education Program ("IEP") report for the previous academic year; however, Regina stated that she spoke with Plaintiff's teachers who said that although Plaintiff tried hard in class, they were not sure whether she would continue on to the second grade. (R. at 280.) Regina also testified that Plaintiff would remain in a self contained class regardless of whether or not she progressed to second grade or remained in first grade. (R. at 281.)

Regina testified that Plaintiff has three siblings, one older and two younger. (R. at 282.) Regina noted that Plaintiff gets along with her siblings at times, but frequently starts fights with

---

[1] Regine noted that the elementary school in East Orange also wanted Plaintiff to repeat the first grade. (R. at 278.)

her sisters. (R. at 282; 289.)  Regina also noted that she does not let Plaintiff outside much to play with her friends. (R at 283.)  Instead, Plaintiff spends a lot of time in the house playing video games. (Id.)

In addition, Regina stated that Plaintiff has medical problems due to her asthma. (R. at 282.)  Plaintiff takes numerous medications, and uses a nebulizer, a dehumidifier, and pumps in order to maintain her condition. (R. at 283.)  Regina testified that the medication stabilizes Plaintiff's condition. (Id.)  Regina noted that Plaintiff can play physical sports outside, but sometimes her asthma causes her to get out of breath.  (R. at 290.)  Regina testified that Plaintiff plays outside once per week during the weekends.  (Id.)

Plaintiff's teacher informed Regina that Plaintiff has problems with hyperactivity.  (R. at 282.) Regina testified that Plaintiff does not take medication for hyperactivity because her pediatrician recommended that Plaintiff get "weaned" off some of her asthma medications before taking any more medications. (R. at 283-84.)  Regina said Plaintiff has not been evaluated for her hyperactive behavior, but is on a waiting list at Trinitos Hospital for a program that would evaluate her potential  hyperactivity problem. (R. at 284.)

### 2.  Educational and Medical Reports

In May of 2001, Plaintiff underwent numerous educational and psychological tests in order to address concerns with her progress at school. (R. at 92-177.) The school completed its first report when Plaintiff was seven years old and in the first grade. (R. at 92.)  It stated in the report that Plaintiff had poor short term memory and poor organizational skills.  (R. at 98.)  However, the it also stated Plaintiff had strong verbal skills in the report. (Id.)   In the report it mentioned a possible hyperactivity disorder and a "learning disability with perceptual deficits."

(R. at 97.) In addition, the school did not mention any behavior difficulties with other students in the report. (See R. at 93; 96; 107; 117.) The school recommended Plaintiff continue to participate in the general education program for certain classes[2], but suggested Plaintiff be placed in a special education class for the remainder of her courses at school. (R. at 107.)

Roger Gilbert, the school psychologist, assessed Plaintiff's intellectual functioning. (R. at 152-54.) Plaintiff's IQ testing indicated she has a full scale score of 84, a verbal IQ of 91, and a performance score of 79. (R. at 153.) Mr. Gilbert noted Plaintiff was functioning at the low average level of intelligence as compared with her peers and low average ability was present in abstract thinking and verbal concept formation. (Id.) In addition, the Dr. Gilbert stated Plaintiff's expressive word knowledge was on the high average level, and her verbal abilities were stronger than her performance skills. (Id.)   Mr. Gilbert concluded that Plaintiff would benefit from a "supportive ans structured educational environment," and that she responds well to encouragement after successfully completing an assignment or behaving well in school. (R. at 154.)

On May 3, 2001, Audrey Horn, L.D.T.C., a learning consultant, examined Plaintiff and concluded that Plaintiff's grade equivalents ranged from the middle of kindergarten to the beginning of first grade. (R. at 164.) In the broad areas, Plaintiff's grade equivalents in reading, math, written language, and knowledge were all within the beginning of first grade range. (R. at 164.) Ms. Horn noted Plaintiff had deficits in language re-phrasing, repeating directions, and phonologically processing of information. (Id.)

In June 2001, a speech therapist performed a test of early language development on

---

The report cited art, music, physical education, and computers. (R. at 107.)

Plaintiff. (R. at 155.)  The speech therapist's report indicated, "Plaintiff is functioning adequately in articulation language voice and fluency." (R. at 158.)  The speech therapist recommended that while Plaintiff's language skills should continue to be developed in the classroom, she did not need special speech services.  (Id.)

In July 2001, Dr. Joseph A. Nazareth performed a neuropsychiatric evaluation on Plaintiff. (R. at 172-77.)  Dr. Nazareth concluded Plaintiff has  "poor focusing ability, writes letters backwards, and has poor comprehension." (R. at 177.)  In addition, Dr. Nazareth noted that Plaintiff has Attention Deficit Hyperactivity Disorder and a learning disability with perceptual deficits. (Id.)

In February of 2002, Dr. A.M. Ricciardi, Plaintiff's pediatrician, completed an asthma condition report, in which he noted Plaintiff had not visited the hospital, the emergency room, or his office during the last 12 months for severe asthma.  (R. at 179.)  He also noted that Plaintiff had not experienced any growth deficits. (Id.)

In March 2002, the Roselle school system evaluated Plaintiff's academic progress and found that Plaintiff fits nicely into the specialized class-room setting. (R. at 215.) Plaintiff's progress report noted that while she needed to improve in the language arts, she was performing satisfactorily in Math and Reading. (Id.)  Furthermore, Plaintiff's overall grade for "social attitudes" was satisfactory; although, she needed some improvement in self control and assuming responsibility. (Id.)

In November 2002, Dr. Najib performed a consultive examination on Plaintiff. (R. at 232.) Regina, Plaintiff's mother, told Dr. Najib that Plaintiff is "very talkative, cannot stop her activity, and does not follow directions." (Id.)  In addition, Regine told Dr. Najib that Plaintiff

6

"interrupts the activities of the other kinds in school, but she does not fight and does not hit other kids." (Id.) Regine also mentioned to Dr. Najib that she had complained to Plaintiff's primary care physician, but Plaintiff's physician did not believe that she needed an evaluation by a pediatric neurologist or psychologist and the physician monitors Plaintiff's condition every six to twelve months and had not noted any changes in her behavior. (Id.)

Dr. Najib evaluated Plaintiff's developmental history and concluded that her speech development was within normal limits. (R. at 233.) Dr. Najib's physical examination revealed Plaintiff was not in any respiratory distress. (Id.) Dr. Najib noted that during the interview Plaintiff was cooperative. (Id.) Plaintiff answered questions, listened, and followed directions. (Id.) Dr. Najib concluded that Plaintiff was an eight year old child with hyperactivity. (R. at 243.)

In April 2003, the Roselle public school completed another IEP report on Plaintiff's academic progress. (R. at 241.) In the IEP it stated that Plaintiff's functional math grade level had risen to 2.8, and her functional reading grade level had risen to 2.1. (R. at 243.) Plaintiff's educational strengths included developing of fluency as a reader and gaining an understanding of math concepts and computational skills. (Id.) It also stated in the report that Plaintiff experienced some developmental delays in "oral and written expression skills, language mechanics, and the ability to maintain attention to a task." (Id.) Plaintiff's personality was also evaluated and the school noted that Plaintiff becomes easily upset, hurt or discouraged at times, but she responds well to praise. (Id.) It did not mention in the report whether or not Plaintiff's behavior impede's on the learning of other students. (Id.) In addition, there were no known health problems. (Id.)

## II. Discussion

## A. Standard of Review

A reviewing court must uphold the Commissioner's factual decisions if they are supported by "substantial evidence." 42 U.S.C. §§ 405(g), 1383(c)(3); Williams v. Sullivan, 970 F.2d 1178, 1182 (3d Cir. 1992), cert. denied sub nom. Williams v. Shalala, 507 U.S. 924 (1993). "Substantial evidence" means more than "a mere scintilla." Richardson v. Perales, 402 U.S. 389, 401 (1971) (quoting Consolidated Edison Co. v. NLRB, 305 U.S. 197, 229 (1938)). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." Id. Some types of evidence will not be "substantial." For example,

> [a] single piece of evidence will not satisfy the substantiality test if the [Commissioner] ignores, or fails to resolve, a conflict created by countervailing evidence. Nor is evidence substantial if it is overwhelmed by other evidence – particularly certain types of evidence (e.g. that offered by treating physicians) – or if it really constitutes not evidence but mere conclusion.

Wallace v. Sec'y of Health & Human Servs., 722 F.2d 1150, 1153 (3d Cir. 1983) (quoting Kent v. Schweiker, 710 F.2d 110, 114 (3d Cir. 1983)). The ALJ must make specific findings of fact to support his ultimate conclusions. Stewart v. Secretary of HEW, 714 F.2d 287, 290 (3d Cir. 1983). "Where the ALJ's findings of fact are supported by substantial evidence, the [reviewing court] is bound by these findings, even if [it] would have decided the factual inquiry differently." Fargnoli v. Massanari, 247 F.3d 34, 35 (3d Cir. 2001). Thus, substantial evidence may be slightly less than a preponderance. Stunkard v. Sec'y of Health & Human Servs., 841 F.2d 57, 59 (3d Cir. 1988).

"The reviewing court, however, does have a duty to review the evidence in its totality." Schonewolf v. Callahan, 972 F. Supp. 277, 284 (D.N.J. 1997) (citing Daring v. Heckler, 727 F.2d

64, 70 (3d Cir. 1984)).  In order to review the evidence, "a court must 'take into account whatever in the record fairly detracts from its weight.'" Id. (quoting, Willibanks v. Sec'y of Health & Human Servs., 847 F.2d 301, 303 (6th Cir. 1988)).  The Commissioner has a corresponding duty to facilitate the court's review: "[w]here the [Commissioner] is faced with conflicting evidence, he must adequately explain in the record his reasons for rejecting or discrediting competent evidence." Ogden v. Bowen, 677 F. Supp. 273, 278 (M.D. Pa. 1987) (citing Brewster v. Heckler, 786 F.2d 581 (3d Cir. 1986)).  As the Third Circuit has held, access to the Commissioner's reasoning is indeed essential to a meaningful court review:

> Unless the [Commissioner] has analyzed all evidence and has sufficiently explained the weight he has given to obviously probative exhibits, to say that his decision is supported by substantial evidence approaches an abdication of the court's duty to scrutinize the record as a whole to determine whether the conclusions reached are rational.

Gober v. Matthews, 574 F.2d 772, 776 (3d Cir. 1978) (quoting, Arnold v. Sec'y of Health, Educ. & Welfare, 567 F.2d 258, 259 (4th Cir. 1977)).  "[The reviewing court] need[s] from the ALJ not only an expression of the evidence []he considered which supports the result, but also some indication of the evidence which was rejected." Cotter v. Harris, 642 F.2d 700, 705 (3d Cir. 1981).  Without such an indication by the ALJ, the reviewing court cannot conduct an accurate review of the matter; the court cannot determine whether the evidence was discredited or simply ignored.  See Burnett v. Comm'r of Soc. Sec., 220 F.3d 112, 121 (3d Cir. 2000) (citing, Cotter, 642 F. 2d at 705); Walton v. Halter, 243 F.3d 703, 710 (3d Cir. 2001).  "The district court ... is [not] empowered to weigh the evidence or substitute its conclusions for those of the fact-finder." Williams, 970 F.2d at 1182 (citing, Early v. Heckler, 743 F.2d 1002, 1007 (3d Cir. 1984)).

9

### B.  Determining Disability in Children

The SSI program provides benefits to individuals who meet certain statutory income and resource limitations.  42 U.S.C. § 1381.  For children seeking SSI due to disability, the statute states:

> [a]n individual under the age of 18 shall be considered disabled for the purposes of this title if that individual has a medically determinable physical or mental impairment, which results in marked and severe functional limitations, and which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months.

42 U.S.C. § 1382c(a)(3)(C)(i).  Thus, plaintiffs seeking SSI must show: (1) a medically determinable physical or mental impairment; (2) marked and severe functional limitations; and (3) both of the previous elements for a continuous period not less than twelve months.  Id.

The Commissioner's regulations defines "marked and severe functional limitations" sufficient to show childhood disability in terms of Listing-level severity.  20 C.F.R. §§ 416.902, 416.906, 416.926a(a).  In addition, the Commissioner utilizes a sequential evaluation process in order to determine childhood disability.  20 C.F.R. § 416.924.  First, the Commissioner determines whether the child is engaged in substantial gainful activities.  Second, the Commissioner must decide whether the child has a "severe" impairment or combination of impairments.  Finally, the Commissioner decides whether the child's impairment is of Listing-level severity.  Id.  If a child's impairment, or combination of impairments, equals a listed impairment, he will be found disabled.  20 C.F.R. § 416.926.  If a child's impairment does not equal an impairment contained in the Listing of Impairments, the Commissioner will assess all

functional limitations caused by the child's impairments.  20 C.F.R. § 416.926a.  If the functional limitations caused by the child's impairment are equivalent to the functional limitations of a listed disability, the child will be found disabled.  Id.

In order to make this determination, the Commissioner will consider how the child functions in his activities with regards to six domains:

(i) Acquiring and using information;

(ii) Attending and completing tasks;

(iii) Interacting and relating with others;

(iv) Moving about and manipulating objects;

(v) Caring for yourself; and,

(vi) Health and physical well-being.

20  C.F.R.  §  416.926a(b)(1)(i-vi).  A  medically  determinable  impairment  or  combination  of impairments functionally equals a listed impairment if it results in "marked" limitations in two of the aforementioned domains or an "extreme" limitation in one domain.  20 C.F.R. § 416.926a.  A limitation is "marked" if it seriously interferes with the child's ability to independently initiate, sustain, or complete activities.  20 C.F.R. § 416.924a(e)(2).  An "extreme" limitation is "more than marked."  § 416.924a(e)(3).  This adjective describes the very worst limitations.  Id.  Thus, in order to warrant a disability determination, a child's functional limitations must be more than moderate in at least two domains.  § 416.924a(e)(2).

### C.  The Record Must Provide Objective Medical Evidence

Under the Act, proof of a disability requires objective medical evidence.  "An individual shall not be considered to be under a disability unless he furnishes such medical and other

11

evidence of the existence thereof as the Secretary may require." 42 U.S.C. § 423(d)(5)(A). Additionally, "[a]n individual's statement as to pain or other symptoms shall not alone be conclusive evidence of disability as defined in this section." Id. Specifically, a finding that one is disabled requires:

> medical signs and findings, established by medically acceptable clinical or laboratory diagnostic techniques, which show the existence of a medical impairment that results from anatomical, physiological, or psychological abnormalities which could reasonable be expected to produce the pain or other symptoms alleged and which, when considered with all evidence required to be furnished under this paragraph . . . would lead to a conclusion that the individual is under a disability.

Id.; see 42 U.S.C. § 1382c(a)(3)(A) (defining a disabled person as one who is "unable to engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment . . ."). Furthermore, S.S.R. 96-7p provides that:

> [t]he adjudicator must evaluate the intensity, persistence and limiting effects of the [claimant's] symptoms to determine the extent to which the symptoms limit the individual's ability to do basic work-related activities. To do this, the adjudicator must determine the credibility of the individual's statements based on consideration of the entire case record. The requirement for a finding of credibility is found in 20 C.F.R. § 404.1529(c)(4) and § 416.929(c)(4).

Nevertheless, a claimant's symptoms, "such as pain, fatigue, shortness of breath, weakness, or nervousness, will not be found to affect . . . [one's] ability to do basic work activities unless medical signs or laboratory findings show that a medically determinable impairment(s) is present." 20 C.F.R. § 404.1529(b); see Hartranft v. Apfel, 181 F.3d 358, 362 (3d Cir. 1999) (rejecting claimant's argument that ALJ failed to consider his subjective symptoms where ALJ made findings that complaints of pain and symptoms were inconsistent with objective medical

evidence and claimant's hearing testimony); Williams, 970 F.2d at 1186 (denying claimant benefits where claimant failed to proffer medical findings or signs that he was unable to work); Green v. Schweiker, 749 F.2d 1066, 1069-70 (3d Cir. 1984) (emphasizing that "subjective complaints of pain, without more, do not in themselves constitute disability").

### III. Analysis

Plaintiff argues the ALJ did not base his decision on substantial evidence. (Pl. Brief at 9). Specifically, Plaintiff contends the ALJ did not properly evaluate Plaintiff's impairments under step three. (Id.) Plaintiff argues that an ALJ must make his findings and provide a proper explanation, and in the instant matter the ALJ did not provide an explanation as to why Plaintiff's impairments did not meet or equal the medical listing. (Pl. Brief 5-12). This Court rejects Plaintiff's arguments

#### A. The Decision of the ALJ was Based on Substantial Evidence

The ALJ applied the three step sequential evaluation analysis set forth by the Commissioner at 20 C.F.R. § 416.924(a)-(d). (R. at 19.) First, the ALJ determined that Plaintiff had never engaged in substantial gainful activity. Second, the ALJ found Plaintiff had a "severe" impairment consisting of Attention Deficit Hyperactivity Disorder ("ADHD"), but noted that Plaintiff's asthma did not constitute a "severe" impairment. Third, the ALJ evaluated Plaintiff's impairment under section 112.22 of the listings and concluded that the evidence failed to "demonstrate marked inattention, marked impulsiveness, and marked hyperactivity." (R. at 19.) Finally, the ALJ considered whether Plaintiff's impairments were functionally equivalent to the listings and determined Plaintiff did not demonstrate two "marked" or one "extreme" limitation in one of the six domains of functioning.

### 1. Plaintiff's Impairments Did Not Meet Section 112.22 of the Listings

Plaintiff argues the ALJ concluded that she failed to demonstrate marked inattention, impulsiveness, or hyperactivity without providing a proper explanation. Section 112.22 of the listings requires a plaintiff to demonstrate the following:

> A. Medically documented findings of marked[3] inattention, marked impulsiveness, and marked hyperactivity;
>
> and
>
> B. Resulting in two of the appropriate age-group criteria in paragraph B2 of 112.02. That is, marked impairment in age-appropriate cognitive/communicative function, marked impairment in age-appropriate social functioning, or marked difficulties in maintaining concentration, persistence or pace.

In the instant matter, the ALJ found that Plaintiff "puts forth good effort in school, is able to complete her homework and classwork, and she is not maintained on any prescription medicine for her condition." (R. at 19.) In addition, the ALJ determined that the state agency medical consultants did not find a listing level severity or equivalence. (R. at 19.) Moreover, the ALJ remarked that the record lacked any subsequent medical opinions indicating that Plaintiff's condition met the Listings' requirements. (R. at 19.) Therefore, Plaintiff's argument fails because the ALJ cited evidence to support his conclusion, and the ALJ noted the lack of evidence

---

[3] The Commissioner will find that a claimant has a "marked" limitation in a domain when the claimant's impairment(s) interfere seriously with their ability to independently initiate, sustain, or complete activities. A "marked" limitation is a limitation that is "more than moderate" but "less than extreme." 20 CFR 416.926a. The Commissioner would expect to find standardized testing scores that are "at least two, but less than three, standard deviations below the mean." Id. The Commission will consider a health or physical well-being limitation "marked" if the claimant is frequently ill due to the impairment or has frequent exacerbations, which cause significant, documented symptoms or signs. Id.

to support a contrary conclusion.

Although Plaintiff questions the "evidentiary substance and support for" the ALJ's conclusion, she does not direct this Court to any medical documentation supporting a finding that Plaintiff suffers from marked inattention, marked impulsiveness, and marked hyperactivity. (Pl. Br. 11).  After reviewing the entire record, this Court finds the ALJ's conclusion that Plaintiff's condition does not meet section 112.22(a) of the listings[4] is supported by substantial evidence.  In his report, Dr. Joseph Nazareth noted that Plaintiff has ADHD, but does not cite any limitations that would suggest marked inattention, marked impulsiveness, and marked hyperactivity. (R. at 177.)  In addition, Regina told Dr. Najib that Plaintiff's pediatrician did not recommend she visit a pediatric neurologist or psychologist. (R. at 232.)  Furthermore, two state agency doctors found Plaintiff's condition did not meet or medically equal any listed impairment.  (R. at 217, 221.)

### 2.  Plaintiff's Impairments Did Not Equal a Functional Equivalence to the Listings

With regard to evaluating whether Plaintiff's impairments are functionally equivalent to the listings, Plaintiff contends the ALJ repeated the same "offense" by failing to provide proper reasoning behind his conclusion.  (Pl. Br. 12).  Plaintiff argues the ALJ cites evidence "out of context and without discussing contradictory and countervailing findings." (Id.)  This Court finds that the ALJ properly weighed the evidence presented and his conclusion is supported by substantial evidence.

The ALJ performed the final step in his inquiry and evaluated each of the six domains of functioning individually as they pertained to Plaintiff.  (R. at 19-20.)  The ALJ addressed

---

[4]Because the court found that substantial evidence exists to support the ALJ's determination that Plaintiff's impairments do not meet section 112.22 part A of the listings, it is unnecessary to evaluate section 112.22 part B of the listings.

evidence supporting his determination, as well as countervailing evidence.  For example, the ALJ evaluated Plaintiff's ability to acquire and use information and noted that Plaintiff has demonstrated developmental delays in oral and written expression skills, but also found that Plaintiff has progressed to the third grade despite her developmental limitations. (R. at 19.)  In addition, the ALJ evaluated Plaintiff's ability to attend and complete class and concluded that although Plaintiff "required direct instruction and more personal attention," the record supports that Plaintiff is cooperative and exhibits good listening skills. (R. at 19.)  Further, the ALJ specifically addressed the weight accorded to Plaintiff's testimony in his conclusion.  (R. at 20-21.)  Therefore, this Court finds that the ALJ weighed all evidence, including countervailing evidence, when evaluating Plaintiff's six domains of functioning and the ALJ's conclusions are supported by substantial evidence.

## IV.  Conclusion

For the reasons stated above, it is the finding of this Court that the decision of the ALJ was supported by substantial evidence. Accordingly, the decision of the Commissioner is **affirmed**.  An appropriate Order accompanies this Opinion.


 S/ Dennis M. Cavanaugh
Dennis M. Cavanaugh, U.S.D.J.


Date:   April 12, 2006
Orig:   Clerks Office
cc:     All Parties
        File